# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SANJU SANJU,

      Petitioner,

      v.                                         Case No. 2:26-cv-00497-KWR-JMR

DORA CASTRO, *Warden of the Otero County Processing*, TODD LYONS, *Acting Director of Immigration and Customs Enforcement*, KRISTI NOEM, *Secretary of the U.S. Department of Homeland Security*, and PAMELA BONDI, *Attorney General of the United States*,

      Respondents.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Petitioner Sanju Sanju's Petition for Writ of Habeas Corpus (Doc. 1) and Petitioner's Motion for Temporary Restraining Order (Doc. 2). This Petition turns on whether Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A) or 8 U.S.C. § 1226(a). Given Petitioner's release on recognizance and his extended time in the United States, the Court finds that he is currently detained pursuant to § 1226(a) and entitled to a bond hearing. Having reviewed the parties' pleadings and the relevant law, the Court finds that the Petition is well-taken and, therefore, is **GRANTED in part**. The Court orders Respondents to hold an individualized bond hearing for Petitioner within **seven (7) days** of the entry of this order.

## BACKGROUND

Petitioner Sanju Sanju is a citizen of India who entered the United States in September 2022. Pet. ¶ 16, Doc. 1; Doc. 1-2 (March 2023 Notice to Appear). After a brief detention, the Department of Homeland Security ("DHS") released Petitioner on parole, subject to monitoring and reporting requirements. Pet. ¶¶ 1, 17. In March 2023, DHS served Petitioner with a Notice to

Appear ("NTA"), and Petitioner was released on his own recognizance. *Id.* ¶ 18; Doc. 1-2; Doc. 14-4. According to Petitioner, for more than three years, he complied with all requirements of his release. Pet. ¶¶ 19, 21. He timely applied for asylum and obtained and maintained lawful work as a commercial truck driver. *Id.* ¶ 20. At no point was Petitioner given notice that his conditional parole was in jeopardy or revoked. *Id.* ¶ 21.

On February 15, 2026, Petitioner was stopped by Border Patrol at a routine inspection checkpoint. *Id.* ¶ 22. Despite informing officers of his lawful employment status and conditional parole, Petitioner was arrested and detained. *Id.* ¶¶ 22–23. Petitioner is currently detained at the Otero County Processing Center in New Mexico. *Id.* ¶ 12.

On September 5, 2025, the Board of Immigration Appeals issued a decision holding that immigration judges lacked authority or jurisdiction to consider bond requests for any person who entered the United States without admission. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225 (BIA 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."). Considering *Hurtado*, Petitioner has remained in custody without an opportunity to post bond or request conditional release because his detention has been classified as mandatory under § 1225(b)(2)(A). Pet. ¶¶ 25–26.

In sum, Petitioner asserts that he has remained in federal immigration custody without an opportunity to post bond or request a conditional release because his detention has been classified as mandatory under 8 U.S.C. § 1225(b). *Id.* Petitioner requests that the Court issue a writ of habeas corpus requiring Respondents to (1) release Petitioner or (2) conduct an individualized bond hearing. *Id.* at 11.

In the Petition and Response, the parties indicated that Petitioner was released on parole, pursuant to 8 U.S.C. § 1182(d)(5)(A), at the time of his February 2026 arrest. *See* Doc. 10 at 6–8 (Response to Petition). Yet, the evidence on the record indicated that Petitioner's § 1182 parole

2

expired in November 2022. Doc. 1-3 at 3 (Parole Documents). On April 14, 2026, the Court ordered the parties to provide further documentation as to Petitioner's parole status. Doc. 12 (Order for Supplemental Briefing and Record). The resulting evidence produced by Respondents confirmed that Petitioner was released on his own recognizance, pursuant to § 1226(a)(2)(B). *See* Doc. 14-4 (Order of Release on Recognizance). As a result, Respondents withdrew their argument that Petitioner's detention is proper under § 1182, Doc. 14 at 2 (Supplemental Response), and the Court will not address it.

Respondents maintained that Petitioner is subject to mandatory detention under § 1225(b)(2)(A) and incorporated the arguments made in *Munoz Teran v. Bondi*, No. 2:25-cv-01218-KWR-SCY, 2026 WL 161527 (D.N.M. Jan. 21, 2026). Doc. 14 at 4. In *Munoz Teran*, the respondents did not raise administrative exhaustion or jurisdiction issues. Neither in this case nor in *Munoz Teran* did Respondents claim that Petitioner is detained under 8 U.S.C. § 1225(b)(1). The Court declines to *sua sponte* raise administrative exhaustion or detention under § 1225(b)(1). *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself.").

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A challenge to immigration detention is "properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

**DISCUSSION**

Petitioner asserts in his § 2241 habeas petition that his arrest and mandatory detention violate the Immigration and Nationality Act ("INA") and his constitutional right to due process. Pet. ¶¶ 38–49. Respondents claim that Petitioner is properly detained pursuant to § 1225(b)(2)(A) and is not entitled to a bond hearing. Doc. 14 at 2. Since Petitioner was previously released pursuant to § 1226(a), he cannot be deemed "seeking admission" under § 1225(b)(2)(A). Accordingly, the Court finds that he is detained pursuant to § 1226(a) and is entitled to an individualized bond hearing before an immigration judge.

## I.      Petitioner's detention is governed by §1226(a), not § 1225(b)(2)(A).

Respondents argue that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2)(A) and is not entitled to a bond hearing. Doc. 14 at 2. Petitioner disagrees and contends that his detention is governed by § 1226(a). Pet. ¶ 28.

Section 1226(a) allows immigration officers, in their discretion, to detain noncitizens or release them on conditional parole. § 1226(a). Release on one's own recognizance is a form of conditional parole under § 1226(a)(2)(B). *See Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (B.I.A. 2023) ("[They were] released on their own recognizance pursuant to DHS' conditional parole authority under . . . 8 U.S.C. § 1226(a)(2)(B)."); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the . . . phrase 'release on recognizance' [is] another name for 'conditional parole' under § 1226(a).").

On March 3, 2023, Petitioner was released on his own recognizance, a form of conditional parole, pursuant to § 1226(a). Doc 14-4; *see also Cabrera-Fernandez*, 29 I. & N. Dec. at 747. Release on recognizance is not categorized as "humanitarian" or "public benefit" parole under 8 U.S.C. § 1182(d)(5)(A). Thus, Petitioner was released pursuant to § 1226(a)(2)(B) which indicates that Petitioner cannot now be detained under § 1225(b). *See Matter of M-S-*, 27 I. & N. Dec. 509,

516 (Att'y Gen. 2019) ("Yet [§ 1225] (under which detention is mandatory) and [§ 1226(a)] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens."); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025) (noting that the respondents did not "dispute that [§§ 1225 and 1226] . . . are mutually exclusive"). In addition to being initially released pursuant to § 1226(a), Petitioner, who has been present in the United States for over three years, cannot be deemed "seeking admission" under § 1225(b)(2)(A).

When interpreting a statute, courts first "examine the statute's plain text" and "[a]bsent ambiguity, [the] analysis ends there." *United States v. Koerber*, 10 F.4th 1083, 1112 (10th Cir. 2021). Should the analysis continue, the Court considers the "language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) ("We also take into account the 'broader context of the statute as a whole' when ascertaining the meaning of a particular provision." (citation omitted)). Courts also consider traditional canons of statutory interpretation. *Conrad*, 585 F.3d at 1381; *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011). Generally, the Court considers non-textual evidence bearing on Congress's intent or purpose, such as legislative history, only if the statutory language is ambiguous. *See, e.g.*, *United States v. Husted*, 545 F.3d 1240, 1247 (10th Cir. 2008) ("[I]t is a longstanding principle that absent ambiguity we cannot rely on legislative history to interpret a statute.").

Under the INA, two statutes generally govern a noncitizen's detention pending a final order of removal: §§ 1225 and 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1225, which mandates detention and does not afford a bond hearing, applies when "an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Section 1226 provides that a noncitizen "may be arrested and detained" pending

a removal decision. § 1226(a). Under § 1226(a), the Attorney General may detain arrested noncitizens, release them on bond, or release them on conditional parole. Section 1226(c) mandates detention for a noncitizen that is (1) present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits" to committing certain criminal acts. 8 U.S.C. § 1226(c)(1)(E).

In sum, immigration law authorizes the detention of "certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (quoting *Jennings*, 583 U.S. at 289); *see also Cunha v. Freden*, No. 25-3141-pr, slip op. at 37 (2d Cir. Apr. 28, 2026). For Petitioner's detention to be governed by § 1225(b)(2)(A), the Court must find that Petitioner (1) is an "applicant for admission," (2) who is "seeking admission," and (3) is "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A).

Petitioner is likely an "applicant for admission" as defined by statute. "[A]pplicant for admission" is defined as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "Admission" and "admitted" mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Here, Petitioner is "present in the United States" as he has lived in the United States for over three years, and he has not been admitted after inspection by an immigration officer. Pet. ¶ 18; *see also* Doc. 1-2 at 4 (March 2023 Notice to Appear). Thus, per the statutory definition, Petitioner may be deemed an "applicant for admission" thereby satisfying the first criteria of § 1225(b)(2)(A).

The crux of the § 1225(b)(2)(A) inquiry is whether Petitioner can be deemed "seeking admission." As explained below, after a plain reading of the statute, the Court finds that Petitioner, who has been living in the United States for over three years, is not "seeking admission."

The Court begins with the plain text of the phrase "seeking admission." *See Koerber*, 10 F.4th at 1112. Since "seeking" is statutorily undefined, the Court will first consider the word "admission." "Admission" is statutorily defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." § 1101(a)(13)(A). "Entry" is statutorily undefined. Respondents do not assert that the word "entry" has any unusual, technical meaning, and therefore, the Court will apply its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017). "Entry" ordinarily means "[t]he action or an act of entering a place, area, building, etc." *Entry*, Oxford English Dictionary, https://www.oed.com/dictionary/entry_n?tab=meaning_and_use#5515547 (last visited Apr. 6, 2026); *see also Entry*, Black's Law Dictionary (12th ed. 2024) ("*Immigration*. Any entrance of an alien into the United States, whether voluntary or involuntary."). Thus, the word "admission," as used in § 1225(b)(2)(A), refers to a noncitizen's lawful act of physically entering the United States after inspection and authorization by an immigration officer.

Turning to the statutorily undefined word "seeking," in this context, it ordinarily means trying to obtain something or trying to bring about or effect. *Seek*, Oxford English Dictionary, https://www.oed.com/dictionary/seek_v#23724107 (last visited Apr. 6, 2026). In choosing the present participle "seeking," courts should give effect to Congress's verb choice and find that "seeking" signals present and continuous action. *Carr v. United States*, 560 U.S. 438, 448 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach."); *see also Present Participle*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/present%20participle (last visited Apr. 6, 2026).

Therefore, the Court finds that a plain reading of the phrase "seeking admission" demonstrates that § 1225(b)(2)(A) applies to noncitizens who are presently trying to lawfully and physically enter the United States.[1] Section 1225(b)(2)(A) does not apply to noncitizens who, like Petitioner, have lived in the United States for an extended duration and are not presently seeking lawful entry into the United States.

8 U.S.C. § 1225(a)(3) indicates that Petitioner is not "seeking admission." Section 1225(a)(3) provides that "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." *Id.* The word "or" is "almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'" *United States v. Woods*, 571 U.S. 31, 45 (2013) (citation omitted). Additionally, the use of the phrase "or otherwise" signals that the term "applicants for admission" has a different meaning than the term "seeking admission." *Or Otherwise*, Oxford English Dictionary, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058328 (last visited Apr. 6, 2026) ("In another way or ways; in a different manner; by other means; in other words; differently.").[2] Thus, a plain reading of § 1225(a)(3) demonstrates that Petitioner may be deemed an "applicant for admission" without necessarily being deemed "seeking admission."

---

[1] The Court understands the ordinary meaning of the word "entry," as used in the statute, to mean the physical act of going into the country. The meaning aligns with how "entry" is understood and used by the United States Supreme Court in the immigration context. The word "entry" has long referred to physically going into the country, regardless of whether the entrant is legally in the United States. *See, e.g.*, *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality."); *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

[2] The grammatical placement of "or otherwise" also indicates that "seeking admission" must mean something different than "applicants for admission." *Or Otherwise*, Oxford English Dictionary, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058910 (last visited Apr. 6, 2026) ("[F]ollowing a noun, adjective, adverb, or verb, to signify a corresponding word, thing, idea, etc., of opposite or alternative meaning" (citation modified)). Here, the phrase "or otherwise"

Further, Respondents' interpretation renders recent amendments to 8 U.S.C. § 1226(c) superfluous. Section 1226(c)(1)(E) mandates detention for certain noncitizens who are implicated in certain crimes. It requires detention for a noncitizen who is (1) inadmissible as an alien present in the United States without being admitted or paroled, and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits" to committing certain crimes. Respondents' interpretation of § 1225(b)(2)(A) would require the detention of every noncitizen who is present in the country without being admitted or paroled. Such an interpretation would render the recent § 1226(c)(1)(E) amendment superfluous in that detention would be required regardless of the noncitizen's criminal involvement.

The Supreme Court, in dicta, has recognized that § 1225(b) generally applies "to aliens seeking entry into the United States" and that § 1226(a) "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303. The *Jennings* Court further noted that § 1226(a) creates a default rule for noncitizens present in the United States "by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also permitting "the Attorney General to release those aliens on bond." *Id.* at 303. Thus, the Supreme Court's construction of §§ 1225(b) and 1226(a) align with this Court's reading of the phrases "applicant for admission" and "seeking admission."

The Court's statutory reading of § 1225(b)(2)(A) is consistent with the decisions of multiple courts, which have found that a person who has been present in the United States for an extended period of time is not "seeking admission" and therefore not subject to mandatory detention under § 1225(b)(2)(A). *See, e.g.*, *Cunha*, slip op. at 6; *see also Castañon-Nava*, 161 F.4th

---

follows a noun, "applicants for admission," signifying that the phrase "seeking admission" is a "corresponding word, thing, idea, etc., of opposite or alternative meaning." *Id.*; *see also* § 1225(a)(3).

at 1061; *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 494, 506 (S.D.N.Y. 2025) (collecting cases in Appendix A); *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-CV-1031-KG, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) ("Noncitizens seeking admission are those who have not effected an entry into the United States." (citation modified)); *Buenrostro-Mendez v. Pamela Bondi*, 166 F.4th 494, 510 (5th Cir. 2026) (Douglas, J., dissenting).

Here, Petitioner entered the United States in September 2022 and was initially released on § 1182 parole, which expired in November 2022. Pet ¶ 17; Doc. 1-3 at 3. In March 2023, he was issued a NTA and released on his own recognizance. Doc. 1-2 at 2; Doc. 14-4. He has continuously remained in the United States for over three years. Doc. 11 at 2. Respondents do not suggest, or point to any facts indicating, that Petitioner was seeking lawful, physical entry into the United States at the time of his arrest. Rather, he was stopped and arrested at a highway checkpoint while working as a truck driver. *Id.* ¶¶ 20, 22. Applying this statutory interpretation to the present facts, the Court finds that Petitioner is not "seeking admission" under § 1225(b)(2)(A). Accordingly, Petitioner's detention is governed by § 1226(a).

## II.    The Court finds that a bond hearing, rather than immediate release, is the appropriate remedy.

Petitioner requests that the Court order immediate release or, alternatively, a bond hearing. Pet. ¶ 47. Elsewhere in the Petition, he requests that the Court "[o]rder Respondents to release Petitioner *unless* an Immigration Judge conducts an individualized bond hearing." Pet. at 11 (emphasis added). Petitioner does not specify which party should carry the burden of proof at his bond hearing. *Id.*

In accordance with the burden of proof in habeas matters and the principles of party presentation, the Court declines to immediately release Petitioner or shift the burden to

Respondents at his hearing. In the Court's discretion, the Court will order an individualized bond hearing pursuant to § 1226(a).

Petitioner bears the burden of proof to demonstrate that he is entitled to relief or a remedy, including whether the burden should be placed on Respondents to justify his detention at a bond hearing. *See* 28 U.S.C. § 2241; *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) ("[I]t was error for the District Court to effectively impose on the Government the burden of proving that [a petitioner] was not 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citing § 2241(c)(3)); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (finding that, in a § 2241 proceeding, "[t]he burden of proof was upon the petitioner to sustain these allegations"). Petitioner also bears the burden to demonstrate a "deprivation of rights leading to unlawful detention" under § 2241. *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009); *see also Smith v. Workman*, 550 F.3d 1258, 1273 (10th Cir. 2008) (noting that, in the context of a *Brady* violation, the petitioner "bears the burden of showing that the prosecution suppressed material evidence favorable" to the petitioner).

Section 1226(a) gives Respondents discretion to detain, release on bond, or parole a noncitizen. Notably, this section does not expressly provide a statutory right to immediate release. The release or bond decision by an immigration judge usually involves the weighing of evidence and is discretionary. § 1226(a); *Jennings*, 583 U.S. at 295. Such discretionary decisions are generally not reviewable. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."); *see also Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012) ("[T]o the extent [the petitioner] challenges the agency's discretionary bond decision, the magistrate judge was correct that the court lacked jurisdiction.").

To be sure, federal district courts have broad equitable powers in ordering habeas relief. *Burton v. Johnson*, 975 F. 2d 690, 693 (10th Cir. 1992). A federal court is vested with "the largest power to control and direct the form of judgment to be entered in cases brought up before it on *habeas corpus*." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). In issuing a writ of habeas corpus, a federal court has the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243; *see also Clayton v. Jones*, 700 F.3d 435, 443 (10th Cir. 2012) (noting that § 2243 gives district courts "broad discretion to craft appropriate habeas relief").

As to the remedies of release or burden-shifting at the hearing, the Court finds that Petitioner has not demonstrated that any statutory or constitutional violation requires his release. Petitioner briefly argues that the Court should release him from detention as a remedy for a violation of his Fifth Amendment right to substantive due process. *See* Pet. ¶¶ 46–47. But Petitioner does not demonstrate why release would be required, as opposed to a bond hearing pursuant to § 1226(a). *See id.* And Petitioner does not request any specific form of relief for violation of his Fifth Amendment Right to procedural due process. *See id.* ¶ 42. Additionally, Petitioner does not argue that the burden of evidence should be shifted to the Respondents. *See id.* at 11.

The Court declines to conduct this analysis *sua sponte* as this issue was not properly presented to the Court. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments or perform research on behalf of litigants). The principle of party presentation is particularly appropriate here, where this district court is overwhelmed with habeas petitions, and petitioners request that the Court rule immediately. If the Court were to act as Petitioner's counsel and make arguments or do research on his behalf, it would

prejudice other petitioners by delaying a ruling on their petitions. Therefore, Petitioner has not properly placed before the Court the issues of whether he must be immediately released or the burden must be shifted at his bond hearing.

Alternatively, Petitioner does not adequately demonstrate how any of these purported violations require release or shifting the burden. None of the arguments—in Petitioner's case—demonstrate a violation of due process that requires more than a bond hearing pursuant to § 1226(a).

Having found that Petitioner has not properly put the remedies of immediate release or shifting the burden at the bond hearing before the Court, or in the alternative, he did not meet his burden demonstrating the necessity of these remedies, the Court finds that a bond hearing pursuant to § 1226(a) provides Petitioner with the process he is due. *See* § 1226(a) (providing that the Attorney General may continue to detain a noncitizen pending a decision on removal or may release the noncitizen on bond or parole); *see also Martinez Escobar v. Baltazar*, No. 26-cv-00296-NYW, 2026 WL 503313, at *4 (D. Colo. Feb. 24, 2026) (ordering a bond hearing rather than immediate release where due process rights were violated by respondents' failure to apply § 1226(a) discretionary detention provisions). Courts have found that a bond hearing, even after different lengths of delay, sufficiently provides a petitioner with the process he is due. *See, e.g.*, *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1246 (D.N.M. Sep. 17, 2025) (ordering a bond hearing after nearly three months of detention without a hearing); *Kostak v. Trump*, No. 3:25-1093, 2025 WL 2472136, at *4 (W.D. La. Aug. 27, 2025) (denying release and ordering a bond hearing after two months of detention); *Gutierrez v. Garcia*, No. 2:25-cv-001145-WJ-KRS, 2026 WL 310064, at *5–7 (D.N.M. Feb. 5, 2026) (denying release and ordering a bond hearing after nearly six months of detention).

Thus, the Court will order that Respondents hold a bond hearing within seven (7) days of the entry of this order.

**III.    This opinion and the judgment should not be construed as addressing detention under § 1231, if that provision becomes applicable.**

The Petition presented the Court with a narrow issue, whether Petitioner's detention *pending a decision on removal* is governed by § 1225 or § 1226. No party has asserted that § 1231 applies.

Section 1231 governs the detention of noncitizens "during" and "beyond" the "removal period." 8 U.S.C. § 1231(a)(2)–(6). In general, when a noncitizen is ordered removed, the Attorney General shall remove them within 90 days, known as the "removal period." § 1231(a)(1)(A). The "removal period" begins once a noncitizen's removal order "becomes administratively final," § 1231(a)(1)(B), meaning the order has been affirmed by the BIA or the time for seeking review has expired, 8 U.S.C. § 1101(a)(47)(B). *Riley v. Bondi*, 606 U.S. 259, 267 (2025) ("An order of removal becomes final at the earlier of two points: (1) 'a determination by the [BIA] affirming such order,' or (2) 'the expiration of the period in which the alien is permitted to' petition the BIA for review of the order.'") (citation omitted). During the removal period, detention is mandatory. § 1231(a)(2).

No party has argued that § 1231 applies. Thus, as of the entry of this order, it appears that the Court retains the ability to order the requested relief and determine that § 1226(a) governs Petitioner's detention. The Court's order and judgment should not be construed to opine on whether or when in the future Petitioner may be detained under § 1231.

**IV.    The Court need not rule on Petitioner's remaining claims.**

In addition to requesting habeas relief, Petitioner also asserted that his detention violates due process and requested that the Court declare his detention unlawful. Pet. at 11. Because the

14

Court will grant habeas relief, the Court need not address his other claims or enter a declaration. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative."); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Scott v. Mullin*, 303 F.3d 1222, 1224 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim).

## V.      **Attorney's Costs and Fees under the EAJA.**

Finally, Petitioner requests that the Court award attorney's fees and costs under the Equal Access to Justice Act ("EAJA"). Considering recent Tenth Circuit precedent and the relevant procedure, the Court finds that it may consider Petitioner's request for attorney's fees and costs provided that Petitioner follows proper EAJA procedure.

The EAJA provides for the following procedure:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The Tenth Circuit recently held that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1159, 1166 (10th Cir. 2025).

A fee award is required if (1) the petitioner prevails, (2) the Government's position was not "substantially justified," and (3) there are no special circumstances rendering an award of fees unjust. *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting § 2412(d)(1)(A)).

While fees are authorized, the EAJA requires that Petitioner, "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses," and an allegation demonstrating that "the position of the United States was not substantially justified." § 2412(d)(1)(A), (B).  Upon filing this application, the Government must justify its position in any underlying proceedings and district court litigation.  *See Hackett*, 475 F.3d at 1170.

Since the Court grants Petitioner habeas relief, should Petitioner continue to pursue costs and fees, Petitioner is instructed to file an EAJA application following the appropriate procedure.

### CONCLUSION

The Court concludes that Petitioner's detention pending a decision on whether he should be removed from the United States is governed by § 1226(a) as opposed to § 1225(b). However, Petitioner did not adequately present the argument, or meet his burden demonstrating, that he is entitled to anything more than a bond hearing pursuant to § 1226(a). Accordingly, the Petition (Doc. 1) is granted in part. Respondents are directed to arrange individualized bond hearings pursuant to § 1226(a) for Petitioner before an immigration judge within **seven (7) days** of the entry of this **Order. Respondents shall not deny Petitioner bond on the basis that § 1225(b) requires mandatory detention. However**, the Court makes no determination whether or when in the future § 1231 applies to his detention, as it was not briefed or raised in the Petition. The parties are ordered to file a status report within **ten (10) days** of the entry of this order. The Court will enter a separate judgment.[3]

---

[3] The Court need not delay entry of judgment to wait for Respondents to comply with the Court's order. The Court "always retains jurisdiction to enforce its lawful judgments, including habeas judgments." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (explaining that district court has authority to enforce its habeas judgment).

16

**IT IS THEREFORE ORDERED** that Petitioner's Petition (Doc. 1) is hereby **GRANTED in part** for the reasons described in this Memorandum Opinion and Order. Petitioner's Motion for Temporary Restraining Order (Doc. 2) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Respondents shall provide a bond hearing before an immigration judge for Petitioner pursuant to § 1226(a), as opposed to § 1225(b), within **seven (7) days** of the entry of this order, provided that the Court makes no determination whether or when in the future § 1231 detention provisions may apply. Petitioner should be provided with notice of the bond hearing and an opportunity to prepare and present evidence, in accordance with due process. If Petitioner has counsel for his immigration case, counsel shall be provided with notice of any bond hearing, an opportunity to prepare for the hearing, and an opportunity to appear for the bond hearing.

**IT IS FINALLY ORDERED** that the parties are directed to file a joint status report within **ten (10) days** of the entry of this order.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE